Richardson, Ch. J.,
delivered the opinion of the court:
In February, 1856, the claimants owned property which was taken and destroyed by Indians belonging to the tribe or bands of Eogue Eiver Indians, and this action is brought to recover damages for the same under the act of March 3,1891, chapter 538 (1 Sup. Rev. Stat., 2d ed., p. 913), which provides that the court shall have jurisdiction, among other cases, of—
“ First. All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.”
The defendants resist the claim on two grounds:
First. Because the claimants, aliens by birth, were not citizens of the United States at the time the depredations were *244 committed, though they had become such long before this action was brought. On this point the statute, from a casual reading, may seem to be ambiguous. It confers jurisdiction on the court to inquire into and finally adjudicate on “ all claims for property of citizens of the United States taken or destroyed by Indians,” etc., without declaring specifically whether the claimants must have been citizens at the time of the commission of the depredations, or such only when the act was passed or when their suits are brought.
It is evident that the whole paragraph relates to but one period of time, and that period was when the depredations were committed. It never has been questioned, and nobody can doubt that it was the amity of the band, tribe, or nation at that time which must be proved.
The words “citizens of the United States” and “Indians belonging to any band, tribe, or nation in amity with the United States ” are so closely connected in the same paragraph that they must refer to the same time. The status of both the Indians as to amity and the persons whose property was destroyed as to citizenship, both or neither must be determined as of the time the destruction took place. Their rights and liabilities were fixed at that date, and could not be changed by their future acts. Indians could not avoid liability by subsequently becoming in amity, nor could aliens acquire new rights by subsequently becoming citizens.
If there be doubt and ambiguity on this point we find the intention of Congress made apparent by the course of legislation.
Before 1885 every Indian depredation act provided for indemnity for property destroyed by Indians to any “citizen or inhabitant” of the United States. (Act of 1796, May 19, ch. 30, sec. 14, 1 Stat. L., 472; act of 1799, March 3, ch. 46, sec. 14, 1 Stat. L., 747; act of 1802, March 30, ch. 13, sec. 14, 2 Stat. L., 143; act of 1834, June 30, ch. 161, sec 17, 4 Stat. L., 731; Revised Statutes, sec. 2156.)
The act of 1885, March 3, chapter 341, referred to in the act of 1891, March 3, chapter 538 (set out in Sup. Rev. Stat., 2d ed., p. 913, note), provided for the continuation of the examination, allowance, and approval of Indian depredation claims on behalf of “ citizens of the United States, ” omitting the words “ or inhabitants, ” used in former acts.
*245 This was regarded by tbe Interior Department as significant of tbe intention of Congress to limit allowances in sucb cases to citizens of tbe United States at tbe time tbe depredations were committed, and it bas ever since been tbe practice of tbe Department to find, in allowed cases, that tbe claimants were citizens of tbe United States at tbe time of tbe commission of tbe depredations.
Tbe jurisdictional act of 1891, March 3, chapter 538, which we are now considering, adopted tbe language of tbe act of 1885, to which it refers, and, in our opinion, Congress intended to use therein tbe words “citizens of tbe United States,” in tbe sense that bad been given by tbe Interior Department to tbe same words in tbe act of 1885 for tbe past six years, which, it must be presumed, was known to Congress.
Tbe claimants contend that if that interpretation be correct, they, or tbe survivor who brings this action, having duly made tbe primary declaration to become citizens before tbe depredations were committed, were in law citizens for tbe purpose of tbe act. Tbe authorities are against them on this point, and we can not adopt their construction. (Richards v. McDaniel, 2 Nott & McCord, 351, and 1 McCord, 187; in re Desty, 8 Abb. N. C. (N. Y.), 250; in re An Alien, 7 Hill, 141, Dryden v. Swinburne, 20 W. Va., 89; Long v. Randall, 4 Dill., 425.)
Tbe same interpretation bas been followed by tbe Executive in treaties and public documents.
Second. Another defense against tbe claim is that tbe tribe or bands of Eogue Eiver Indians were not in amity with, tbe United States at tbe time tbe property was taken and destroyed; amity being a condition precedent to tbe right of recovery. Tbe tribe was in armed hostility and war, making a general onslaught on tbe settlers and destroying their property. In this warfare tbe whole tribe was engaged.
Tbe tribe of bands were in treaty relations with tbe United States at tbe same time (10 Stat. L., 1018, 1119), but this warfare and these hostilities prove conclusively that tbe tribe was not in amity with tbe United States within tbe meaning of tbe word as defined by this court in tbe case of Samuel Marks and Hyman Wollenberg v. The United States and the Bannock Indians (ante 147), and so far as it is a question of fact, tbe court bas found tbe fact so to be.
*246 A treaty is some evidence of amity, to be considered witli other facts and circumstances, but is not conclusive.
The jurisdictional act, as we interpret it, is in accord with the general policy of the Government, and of all governments not to pay for property destroyed in war. (See Act of 1887, March 3, ch. 359, § 1, first Proviso, 1 Sup. Bev. Stat., 2d ed., p. 559), and Lor anger’s Case; opinion of Court of Claims by Judge Blackford, A. D. 1857, 35th Congress, 1st session, Bep. C. 0., No. 96.)
The conclusion of the court is that the claimant has no cause of action, and his petition must be dismissed.