Richardson, Ch. J.,
delivered the opinion of the court:
The claimant presented the following petition :

“ To the honorable judges of the Court of Claims :

“Your petitioner, Benjamin H. Johnson, a resident of Scipio, Millard County, in the Territory of Utah, and a citizen of the United States, respectfully shows:
“ That he was not a citizen of the United States on or about the 10th day of June, 1866, the date of the loss hereinafter described, not having taken out his final citizenship papers until 1873.
“That he moved to the United States in 1848, when he was thirteen years old, and has resided here ever since, and was a citizen of the United States at the date of the passage of the Indian depredation law of March 3,1891 (26 Stat. L., cha.p. 538, p. 851).
“That it is admitted, in allowing claims for Indian depredations under the act of March 3, 1885, chapter 341 (1 Supp. R. S., 2d ed., p. 913, note), it has been the practice of the Interior Department to interpret the words “citizens of the Uuited States, ” therein used, as meaning only those who were citizens, or who had declared their intention to become citizens, at the time the depreciations were committed, and such citizenship was found when neither alleged nor testified to where the contrary did not appear.
“That’on or about the 10th day of June, 1866, in the county of Millard, near the town of Scipio, in the Territory of Utah, the following described property belonging to Beniamin H. Johnson, to wit:
2 gray horses, $125 each. $250.00
1 "brown horse. 150. 00
2 three-year-old mares, $75 each. 150.00
1 roan mare. 100.00
1 yellow mare. 125.00
26 range cows and calves, $50 . 1, 300.00
4 yoke of work oxen, at $150 per yoke... 600.00
6 three-year-old steers, at $55 each... . 330. 00
10 two-year-old steers, $40 each. 400.00
6 four-year-old steers, $60 each. 360.00
10 yearlings, $25 each.•. 250.00
Total
4.015.00
*3 was taken from and ont of bis possession, without his consent, by Indians of a band, tribe, or nation in amity with the United States, and known as the Ute Indians, without just cause or provocation on the part of the owner or the agent in charge, with the intent to, and did then and there, deprive him of thé use and value of all said property, nor was said property, or any part thereof, ever returned or paid for.
“That this claim was never presented to the Commissioner of Indian Affairs, nor to Congress, nor any agent or Department of the Government.
“Petitioner avers that no assignment or transfer of said claim, or any part thereof, or right, title, or interest therein, has been made, and that he is the lawful owner thereof, and justly entitled to the amount herein claimed, after allowing all just credits and set-off's.
“Wherefore your petitioner prays judgment against the defendants, ‘ upon the facts and the law, ’ for four thousand and fifteen dollars ($4,015.00), and that the lawful fees and expenses be allowed therefrom to hisattorney ofrecordforprosecuting this claim, and that your petitioner may have such further relief in the premises as the nature of his case shall require and to this honorable court shall seem meet.”
To this the defendants file a motion to dismiss, for want of jurisdiction, as follows:
“In this cause come the defendants, and move that the same be dismissed, for the reason that it appears in the petition itself that the claimant was not a citizen of the United States at the time of the depredation alleged to have been committed, and the court has not, therefore, jurisdiction to entertain the same. ”
The act of March 3,1891 (ch. 538), under which the action is brought, so far as it affects the question now under consideration, is as follows (1 Supp. R. S., 2d ed., p. 913):
“Beit'enacted, etc., That, in addition to the jurisdiction which now is, or may hereafter be, conferred upon the Court of Claims, said court shall have and possess jurisdiction and authority to inquire into and finally adjudicate, in the manner provided in this act, all claims of the following classes, namely:
“First. All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.”
The citizenship of the claimant is thus made a jurisdictional fact, and if it does not appear, the court can not proceed to hear the case on its merits. The petition alleges that the claimant was a citizen of the United States when the act of March 3,1891, *4 was passed, but not when the depredations were committed, • though he had previously declared his intention to become such. (Rev. Stat., sec. 2165, “ First. ”)
This raises the single question whether or not a claimant must have been a citizen of the United States at the time the depredations complained of under the act were committed in order to entitle him to any standing in court.
The same question arose in the case of Valk, executor, etc., v. The United States (28 C. Cls. R., 241), and is not free from doubt, We repeat substantially what we said in that case.
It is evident that the whole of this paragraph relates to but one point of time, and that period was when the depredation was committed. It never has been questioned, and nobody can doubt, that it was the amity of the band, tribe, or nation at that time which must be proved.
The words citizens of the “United States” and “Indians belonging to any band, tribe, or nation in amity with the United States” are so closely, connected in the same paragraph, that they must refer to the same point of time.
The status both of the Indians as to amity and the persons whose property was destroyed as to citizenship, both or neither must be determined as of the time the destruction took place. The rights and liabilities of the parties were to be fixed as of that date, and could not be changed by their future acts.
Indians not in amity were not to be made liable by subsequently becoming so, and aliens were not to acquire new rights for past depredations by subsequently becoming citizens. If aliens who suffered for depredations could maintain actions by becoming naturalized before the passage of the act of 1891, there seems to be no reason why they may not delay till near the time of filing their petitions.
If there be ambiguity on this point, the course of legislation and the practice of the Interior Department throw much light on the subject.
Before 1885 every Indian depredation act provided for indemnity for property destroyed by Indians to any “ citizen or inhabitant” of the United States. (Act of 1796, May 19, ch. 30, sec. 14, 1 Stat.L., 472; Act of 1799, March 3, ch. 46, sec. 14, 1 Stat. L., 747; Act of 1802, March 30, ch. 13, sec. 14, 2 Stat. L., 143; Act of 1834, June 30, ch. 161, sec. 17, 4 Stat. L., 731, Rev. Stat., sec. 2156.)
*5 The Act of 1885, March 3, chapter 341 referred to in the Act of 1891, March 3, chapter 538 (set out in 1 Supp.to Rev.Stat., 2d ed., p. 913, note), provided for the continuation of the examination, allowance, and approval of Indian depredation claims on behalf of “citizens of the United States,” omitting- the words “or inhabitants, ” used in former acts.
This was regarded by the Interior Department as significant of the intention of Congress to limit allowances in such cases to citizens of the United States at the time the depredations were committed; and it has ever since been the practice of the Department to find, in allowed cases, that the claimants were citizens of the United States at the time of the commission of the depredations.
Thejurisdictionalactof 1891, March 3, chapter 538, which we are now considering, adopted the language of the act of 1885, to which it refers, and in our opinion Congress intended to use therein the words “ citizens of the United States” in the sense that had been given by the Interior Department to the same words in the act of 1885 for the past six years, which, it must be presumed, was known to Congress. In .this we do but adopt and follow the ruling of the Interior Department under said act of 1885, the general policy of which, except as to jurisdiction, Congress seems to have intended to continue.
The claimant contends that if that interpretation be correct, having duly made the primary declaration to become a citizen (Rev. Stat., § 2165) before the depredations were committed, he was in law a citizen for the purposes of the act.
On this point the authorities are against him, and we can nob adopt that construction. (Richards v. McDaniel (2 Nott & McCord, 351, and 1 McCord, 187); In re Desty (8 Abb. New Cases (N. Y.) 250; In re an Alien (7 Hill, 141); Dryden v. Swinburne (20 W. Va., 89); Long v. Randall (4 Dill., 425).
The Constitution and statutes determine, without ambiguity, who are citizens (Constitution, Art. XIV, sec. 1; Rev. Stat., §§ 2165 to 2174), and departmental practice to the contrary has no force. It is only where there is ambiguity in statutes that such practice can be invoked in construing their meaning, as in this case, as to what time the claimant was to have been a citizen.
The judgment of the court is that the petition be dismissed for want of jurisdiction.