Peelle, J.,
delivered the opinion of the court:
The question presented for our decision is whether, at the date of the depredations alleged in the petition, to wit, in the years 1880 and 1881, the claimant was a citizen of the United States within the meaning of section 1 of the act of March 3, 1891 (26 Stat. L., 851), conferring jurisdiction upon the court to hear and determine claims arising from Indian depredations, and which, so far as pertinent to this case, reads:
ap claims for property of citizens of the United States taken or destroyed by Indians belonging to any *554 band, tribe, or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for * *
In the-adjudication of claims arising'under the above act it was early decided by this court that the citizenship of the claimant at the time of the depredation was a jurisdictional prerequisite to the adjudication of such claims. (Valk's case, 28 C. Cls. R., 241; Johnson's case, 29 ib., 1; which latter case was, on appeal to the Supreme Court, affirmed, 160 U. S., 546.)
The facts of the present case are: The claimant was born in Alsace, France, in 1838, a subject of France. Six years thereafter his father died. A few years later his mother married Moses Leffman, and they emigrated to the United States, locating at Lafayette, Ind., leaving the claimant in France. The claimant when 13 years of age came with his elder brother, James, to the United States and went to Lafajmtte. But whether he lived with his mother and stepfather there does not appear. After remaining in that city for about two years the claimant went to Leavenworth, Kans., where he remained for four years, and thence went to Denver, Territory of Colorado, where he was residing at the time of the passage of the act of February 28, 1861, providing for a temporary government for that Territory, and also when the Territory was admitted into the Union as a State by the enabling act of March 3, 1875. (Charters and Constitutions of the United States, vol. 1, pp. 212, 217.)
It is not shown that the claimant’s stepfather, who died before the claimant attained his majority, ever made application .to become a citizen of the United States, or that he was naturalized or exercised the rights of a citizen of the United States or of the State wherein he resided, nor does it appear that he ever stood in the relation of a parent toward the claimant.
Since becoming of ago the claimant has exercised the rights of a citizen in Colorado by voting at both State and national elections, serving on-juries, paying taxes, serving as a member of the State legislature of that State, and as a member of the common council of the city of Denver.
*555 By section 5 of the act providing for a temporary government for the Territory of Colorado it is provided—
“ That every free white male citizen of the United States above the age of twenty-one years, who shall have been a resident of said Territory at the time of the passage of this act, including those recognized as citizens by the treaty with the Bepnblic- of Mexico, concluded February two, eighteen hundred and forty-eight, and the treaty negotiated with the same country on the thirtieth day of December, eighteen hundred and fifiy-three, shall be entitled to vote at the first election, and shall be eligible to any office within said Territory; but the qualifications of voters and of holding office at all subsequent elections shall bo such as shall be prescribed by the legislative assembly.”
Soon after the organization of the Territory the Territorial legislature enacted a law providing, among other things, that citizens of the United States and “persons of foreign birth who have declared their intention to become citizens of the United States conformably to the laws of the United States on the subject of naturalization,” and who have resided in the Territory for six months and in the township, precinct, or ward ten days, preceding any election, shall be eligible to vote. (Page 28, R. S. Colorado, 1868.)
By those acts it will be noted that the right to vote is confined, first, to citizens of the United States; second, to persons of foreign birth who have declared their intention to become citizens, etc. The claimant does not appear to have belonged to either class at the time of the depredation complained of, but in support of his contention he relies upon the case of Boyd v. Thayer (143 U. S., 135).
In that case, when the claimant was 10 years of age his father emigrated to the United States and settled in Ohio, and five years later declared his intention to become a citizen of the United States, but it was not shown that he had completed his naturalization by taking out a certificate thereof at the expiration of five years therefrom. After the expiration of five years from the date of his declaration of intention to become a citizen he exercised rights and claimed privileges in Ohio which could only be exercised and claimed by citizens of the United States. Boycl, on attaining his majority in *556 Ohio, voted under the belief that his father had become naturalized. In 1856 he removed to Nebraska, where he resided and exercised all the rights of a citizen, voting- and holding office, serving in the Army in the late civil war, etc.
Section 5 of the enabling act admitting Nebraska into the Union provides, among other things—
“That every free white male inhabitant above the age of twenty-one years who shall be an actual resident of said Territory, and shall possess the qualifications hereinafter prescribed, shall be entitled to vote at the first election, and shall be eligible to any office within said Territory; but the qualifications of voters, and of holding office at all subsequent elections, shall be such as shall have been prescribed by the legislative assembly; provided that the right of suffrage and of holding office shall be exercised only by citizens of the United States and those who shall have declared on oath their intention to become such, and shall have taken an oath to support the Constitution of the United States and the provisions of this act. * * * ”
The court, following the case of Dred Scott v. Sanford (19 How., 393, 404), said:
“In discussing this question, we must not confound the rights of citizenship which a State may confer within its own limits, and the rights of citizenship as a member of the Union. It does not by any means follow, because he has all the rights and privileges of a citizen of a State, that he must bo a citizen of the United-States. He may have all of the rights and privileges of a citizen of a State and yet not be entitled to the rights . and privileges of a citizen in any other State. * * * Each State may still confer them upon an alien, or anyone, it thinks proper, or upon any class or description of persons, yet he would not be a citizen in the sense in which that word is used in the Constitution of the United States, nor entitled to sue as such in one of its courts, nor to the privileges and immunities of a citizen in the other States. The rights which he would' acquire would be restricted to the States which gave them. The Constitution has conferred on Congress the right to establish an uniform rule of naturalization, and this right is evidently exclusive, and has alwaj^s been held by this court to be so. Consequently, no State, since the adoption of the Constitution, can, by naturalizing an alien, invest him with the rights and-privileges secured to a citizen of a State under the Federal Government, although, so far as the State alone was concerned, he would undoubtedly be entitled to the rights of a citizen, and clothed with all the rights and immunities which the constitution and laws of the State attach to that character.’’
*557 Nothing, therefore, that the State of Colorado did or could hare done would hare invested the claimant with the rights and privileges of a citizen of the United States. Nor did the acts for the temporaiy organization o f the Territorial government, or the enabling act admitting the Territory into the Union as a State, clothe the claimant with the rights of a citizen of the United States.
If it might be held that during the period of his minority the claimant could have acquired citizenship through the naturalization of his stepfather, either directly or through the consequent citizenship of his mother, that would not aid him in this case, as it is not shown that his stepfather ever declared his intention to become a citizen of the United States, or that he was ever naturalized or exercised the rights of a citizen of the United States or of the State wherein he resided. So that the inchoate status which a minor child acquires by virtue of the declaration of intention on the part of his parent to become a citizen of the United States, as ruled in the case of Boyd v. Thayer (supra), will not avail the claimant.
Can the court from these facts, coupled with the, exercise by the claimant of the rights of a citizen of Colorado by voting and holding office therein, presume that the claimant was naturalized? In this respect the court in the case of Boyd v. Thayer (supra), said:
“It is true that naturalization under the acts of Congress known as the naturalization laws can ontybe completed before a court, and that the usual proof of naturalization is a copy of the record of the court. But it is equally true that where no record of naturalization can be produced, evidence that a person, having the requisite qualifications to become a citizen, did in fact and for a long time vote and hold office and exercise the rights belonging to citizens, is sufficient to warrant a jury in inferring that he had been duly naturalized as a citizen. (Blight v. Rochester, 7 Wheat., 535, 546; Hogan v. Kurtz, 94 U. S., 733, 738.)”
But that language is not applicable to the present case for the reason that it is not shown that the claimant’s stepfather ever declared his intention to become a citizen, nor did the ■claimant prior to the depredations complained of.
The case presents some hardships, and if the question involved were one of discretion the court might well sustain *558 the claimant’,s' content!on and hold that he was a citizen at the dates of the several depredations, but as the question is one of jurisdiction the court is without the power, and for that reason the petition must be dismissed, which is accordingly done.