57 CCPA

**Application of Hans HILMER, Gerhard Korger, Rudi Weyer and Walter Aumuller.**

**Patent Appeal No. 8191.**

United States Court of Customs and Patent Appeals.

April 9, 1970.

Eugene O. Retter, John Kekich, Kalamazoo, Mich., attorneys of record for appellants. Sidney B. Williams, Jr., Kalamazoo, Mich., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Judges, and MATTHEWS, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

RICH, Acting Chief Judge.

This is a sequel to our opinion in In re Hilmer, 359 F.2d 859 53 CCPA 1288, (1966) (herein "Hilmer I"), familiarity with which is assumed.

In Hilmer I, under the heading "Reason for Remand," we pointed out that as to claims 10 and 16 there was a rejection with which the board had not dealt and remanded the case for clarification of the board's position "on the rejection of claims 10 and 16 as 'unpatentable over' the interference count in view of Wagner et al."

By way of background, appellants (herein "Hilmer") had been in interference No. 90,218 with a Habicht application which has matured into Habicht patent No. 2,962,530, claim 1 of which was the count in the inference

referred to in the above rejection. Hilmer and Habicht had filed U.S. and foreign "convention" applications in the following order on the following dates:

| | |
|---|---|
| Habicht Swiss application | Jan. 24, 1957 |
| Hilmer German application | July 31, 1957 |
| Habicht U. S. application | Jan. 23, 1958 |
| Hilmer U. S. application | July 25, 1958 |

Hilmer was accorded the benefit of his German application filing date, as a date of invention, but this was not early enough to overcome the date of Habicht's Swiss filing date, to which *he* was held to be entitled on the "priority" issue. Accordingly, Hilmer conceded priority of the *invention of the count* to Habicht.

In Hilmer I, the question we decided was whether the Habicht patent was effective as a *prior art* reference under 35 U.S.C. § 102(e) as of the Swiss filing date. We held that it was not and that it was "prior art" under 102(e) only as of the U.S. filing date, which date Hilmer could overcome by being entitled to rely on the filing date of his German application to show his date of invention. This disposed of a rejection predicated on the *disclosure* of the Habicht patent, as a primary reference, coupled with a secondary prior art patent to Wagner et al., No. 2,975,212, issued March 14, 1961, filed May 1, 1957 (herein "Wagner").

This appeal is from the decision of the board on the remand as to claims 10 and 16, claim 17 evidently now standing allowed in view of our reversal in Hilmer I of the sole ground on which it was rejected.

The board agrees with the view we expressed in Hilmer I that it had failed to pass on the rejection based on the count of the interference in view of Wagner and a finding of obviousness under 35 U.S.C. § 103. It summed up the situation and the issue before it on remand as follows:

> As we stated in the former opinion, we do not consider that there is any

question of *res judicata* or estoppel arising from the interference involved with respect to the present claims and the question which arises then is: is claim 1 of the patent, that is, the subject matter of claim 1, prior art against appellants and on what statutory basis can it be so used?

Using a claim itself as "prior art," a claim being a definition of the *scope* of the patent protection, can be fraught with difficulties,[1] but in this instance Habicht's claim 1 is to a specific bis-sulfonyl urea of a stated formula and there is no problem in this regard. The board, it is to be noted, was meticulous in specifying, in its statement of the question, that we are dealing with *the subject matter of* claim 1 rather than with a patent claim as such.

The board's conclusion was that the subject matter of claim 1, the compound claimed, is prior art against Hilmer. As to the basis on which it can be considered to be, or treated as, prior art, the board divided. Two members stated that the statutory basis is 35 U.S.C. § 102(g) combined with § 119 and read in the light of § 104. The third member declined to accept this, concurred only in the result, and said, "I see no reason to go beyond the concession of priority filed by Hilmer et al. * * *." Since his view was not determinative of the appeal, we consider that what we have before us for review is only the correctness of the reasoning of the majority.

Note must be taken of the fact that the rejection here is under § 103 for obviousness wherefore it is clear that

---

1. See In re Taub, 348 F.2d 556, 52 CCPA 1675 (1965).

the subject matter of the appealed claims is *different* from the subject matter of Habicht's claim 1,[2] allegedly, however, only in an obvious way by reason of the further disclosures of Wagner. Were the appealed claims to the *same* subject matter, it seems clear that Hilmer, because he conceded *priority* to Habicht, would not be entitled to them and Hilmer appears to have admitted as much throughout this appeal. But, it is contended, the situation is different when the claims on appeal are to different subject matter. We confess to some difficulty in determining just what appellants' view is but it seems to come down to this: Appellants are entitled to the benefit of their German filing date and this antedates Habicht's U.S. filing date, which is the earliest date as of which Habicht's claim 1 invention can be "prior art." The words appellants use, referring to Habicht's U.S. filing date, are, "the only possible date that can be considered for anticipation purposes." Appellants appear to use the term "anticipation" in the broad sense to mean "prior."

We turn now to the reasoning by which the board majority arrived at the conclusion that the compound of

Habicht claim 1 is in the *prior* art— i. e., ahead of Hilmer's German filing date—and usable with the Wagner patent to support a section 103 obviousness rejection. We note at the outset that the board majority in no way relied on what occurred in the interference, on the concession of priority, or on any estoppel growing out of the interference.

Before examining the board majority's statutory theory, we will recall the fact that in Hilmer I we dealt with another statutory theory that by combining § 102(e) and § 119 a U.S. patent had an effective date as a prior art reference for all it discloses as of its foreign convention filing date. We reversed that holding and remanded. We now are presented with another theory that by combining § 102(g) with § 119 at least the *claimed* subject matter of a U.S. patent is prior art as of the convention filing date. The crux of the matter lies in § 102(g), which we must have before us. In relevant part it reads:

§ *102. Conditions for patentability; novelty * * ***

A person shall be entitled to a patent unless—

2. *Appellants' claims 10 and 16 read:*
10. The compound of the formula

$\langle H \rangle$ —SO$_2$—NH—CO—NH—CH$_2$—CH$_2$—S—S—CH$_2$—CH$_2$—NH—CO—NH—SO$_2$— $\langle H \rangle$

[A1593]

16. A member selected from the group consisting of (1) N-sulfonyl-N'-b-mercapto ethyl ureas of the formula: R-SO$_2$-NH-CO-NH-CH$_2$-CH$_2$-SH (2) disulfides of the formula: R-SO$_2$-NH-CO-NH-CH$_2$-CH$_2$-S-S-CH$_2$-CH$_2$-NH-CO-NH-SO$_2$-R and (3) non-toxic basic salts thereof wherein R represents a member of the group consisting of cycloalkyl of 6 to 7 carbon atoms and cycloalkyl-alkyl of 6 to 7 carbon atoms.
Claim 1 of the Habicht patent reads:
1. The new bis-sulfonyl urea of the formula

$\left( CH_3 - \langle\!\!\!\rangle - SO_2-NH-CO-NH-CH_2-CH_2-S \right)_2$

[A1595]

In its original opinion the board stated:
* * * Habicht did not disclose (or even suggest) any cyclohexyl or cycloalkyl compounds, no count to a cyclohexyl compound, or broad enough to include cycloalkyl compounds could have been added to the interference, nor could appellants have relied on such compounds to show priority.

* * * * * *

(g) before the applicant's invention thereof the invention was made *in this country* by another who had not abandoned, suppressed, or concealed it. * * * [Emphasis ours.]

The board majority's rationalization begins thus:

Section 102(g) of the statute refers to the prior invention of another as a basis for refusing a patent. Inasmuch as the subject matter of the claim of the Habicht patent is patented to another, it must be recognized as an invention of another, and being the invention of another, some date of invention must be ascribed to it. When nothing else is available, the date of filing the application [in the United States] is by law taken as the date of invention since the invention obviously must have been made on or before the day the application for a patent for it was filed.

But this much, assuming its correctness,[3] would not sustain the rejection because appellants are entitled to a date of invention which is earlier than the day the Habicht application was filed in the United States, the date obviously referred to in the above quotation. To sustain the rejection it was necessary for the board to accord an earlier date to Habicht's invention, the only such date available being the date Habicht filed his application *in Switzerland.* This, however, is not in compliance with the provision of 102(g) that the invention be "made" (or at the very least *be*) "in this country." The board majority attempted to vault this hurdle as follows:

While Section 102(g) refers to the prior invention as made "in this country", this limitation is removed as to application filing date by Section 119 of the statute which provides that an application for a patent for an invention shall have the same effect as though filed in this country on the date a prior application was filed in a foreign country, under the conditions prescribed. That this is the effect of Section 119 is also evident from Section 104. * * * The Habicht invention is * * * entitled to the filing date of the application in Switzerland as its date of invention in this country. Hence, we conclude on the basis of Section 102 (g) and Section 119 that the claimed subject matter of the Habicht patent is available for use against the present application [as patent-defeating prior art] as of the date of the application filed in Switzerland.

We disagree with this line of reasoning.

■ In Hilmer I we explained at length why we could not accept similar reasoning about § 119 which was there alleged to remove or qualify the limitation in § 102(e) to the date when an application was filed "in the United States." For the same reasons we hold, contrary to the ipse dixit of the board, that § 119 does not remove the limitation of § 102(g) found in the phrase "in this country."

■ We disagree with the board that such an effect "is also evident from Section 104." Section 104 merely states that, except as provided by § 119, an applicant or patentee may not establish a date of invention "by reference to knowledge or use thereof, or other activity" in a foreign country. Thus § 119 and § 104 relate, respectively, only to what an applicant or patentee may and may not do to *protect himself* against patent-defeating events occurring between his invention date and his U.S. filing date. Moreover, we discussed § 104 and § 102(a), (e), and (g) in Hilmer I and there showed that they indicate an intention on the part of Congress that knowledge and acts in a

---

3. The board's statement implicitly requires two substantial assumptions: (1) that § 102(g) can be used as a basis for refusing a patent in *ex parte* proceedings and (2) that prior "invention * * * by another" is "prior art" within the meaning of § 103.

foreign country are not to defeat the rights of an applicant for a patent, except as the applicant may become involved in a *priority* dispute with another applicant entitled to § 119 benefits. The present appeal does not involve a *priority* dispute. We repeat what we said at the end of that discussion in Hilmer I (under headnote [8]):

> We think it follows that section 119 must be interpreted as giving only a positive right or benefit to an applicant who has first filed abroad to *protect him* against possible intervening patent-defeating events in *obtaining* a patent.

That Habicht, as an applicant, was entitled to the benefit of his Swiss filing date does not mean that his invention acquires that same date under § 102(g) as patent-defeating prior art, in direct contravention of the "in this country" limitation of the section.

While it has not been discussed in the briefs, the legislative history of section 102(g) clearly shows that the words "in this country" were deliberately inserted in the section. They did not appear in H.R. 9133, the first patent law revision bill introduced July 17, 1950, in the 81st Congress, 2d Session.[4] They appeared in the next bill, H.R. 3760, 82d Congress, 1st Session, April 18, 1951.[5] The present version appeared in the final bill, H.R. 7794, 82d Congress, 2d Session, May 20, 1952, which was enacted. House Report 1923 and Senate Report 1979 on that bill both state:

> Subsection (g) relates to the question of priority of invention between rival inventors.

The Revision Notes forming part of the Reports state, in part:

> Paragraph (g) * * * retains the present rules of law governing the determination of priority of invention.

The Commentary in 35 U.S.C.A. by P. J. Federico states (p. 19):

> Paragraph (g) relates to prior inventorship by another *in this country* as preventing the grant of a patent. It is based in part on the second defense in old R.S. 4920 (see under section 282), and retains the rules of law governing the determination *of priority* of invention developed by decisions. [Emphasis ours.]

In none of this do we find any support for the board majority's theory of statutory interpretation and none is cited by the board in support of its view.

■ As we understand the meaning of the term "priority," it refers either (a) to the issue which exists in the interference proceedings, namely, which of two or more rival inventors *attempting to patent* the *same* invention shall be deemed prior or first in law and *entitled to the patent* or (b) preservation of an effective filing date during a period such as the "convention" year as against acts which would otherwise bar the grant of a patent, for the protection *of an applicant* against loss of right *to a patent*. Nothing we have seen tends to indicate that this matter of "priority" has ever been intended to modify the long-standing provisions of our statutes as to what shall be deemed "prior art" under § 103.[6]

---

4. Section 102(g) of that bill read:
  (g) the invention was in fact invented before the applicant's invention thereof by another who had not abandoned the invention and who was using reasonable diligence in adapting and perfecting the same.

5. (g) before the applicant's invention thereof the invention was in fact made *in this country* by another who had not abandoned it and who was using reasonable diligence *in this country* in reduc-

ing it to practice or had reduced it to practice. [Emphasis ours.]

6. We have considered the views expressed by the author of the board majority opinion herein in a concurring opinion in Ex parte Raspe, 156 USPQ 217 (1967), in a somewhat different factual situation. We think it necessary to distinguish between the right to a patent, which is only a right to exclude others, and a right to practice an invention or to be free of liability for infringement. If the law as

Since we disagree with the board's interpretation of the statute, we disagree with its conclusion that the Habicht claim 1 subject matter is "prior art" as of any date earlier than Habicht's U. S. filing date (if it is "prior art" at all). Appellants have an earlier effective date. The rejection, on the board majority's theory, is therefore reversed. Habicht's claim 1 compound being removed as "prior art," it is unnecessary to reach the second question posed by the board, whether the subject matter of claim 1 can be used in combination with the other reference, Wagner.

The decision of the board affirming the rejection of claims 10 and 16 is reversed.

Reversed.

it has been written by Congress creates anomalous situations, then it is for Congress to decide whether to change the law. In the present case we do not see the

anomalous situation that was seen in *Raspe* since allowance of claims 10 and 16 would not give appellants coverage of Habicht's claim 1 compound.