58 CCPA

**Application of Vincent J. FRILETTE and Paul B. Weisz.**

**Patent Appeal No. 8400.**

United States Court of Customs and Patent Appeals.

Jan. 14, 1971.

---

Richard K. Stevens, John F. Witherspoon, Stevens, Davis, Miller & Mosher, Arlington, Va., for appellant; O. G. Hayes, New York City, George A. Depaoli, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals insofar as it affirmed the rejection of claims 1, 2, 12, 13, 20–22 and 24 in appellants' application serial No. 559,061, filed June 21, 1966, for "Catalytic Conversion of Hydrocarbons." The application is a division of appellants' copending application serial No. 763,433, filed September 26, 1958.

The history of the parent application is essential in understanding the issues now before us. Appellants provoked an interference between their parent application and a patent to Kimberlin et al. by copying the following claims from the patent:

1. A process for upgrading hydrocarbons which comprises contacting a hydrocarbonaceous fluid in a conversion zone at elevated temperatures with a crystalline metallic aluminosilicate catalyst having uniform pore openings between about 6 and about 15 Angstrom units, said material being the sole conversion catalyst in said zone and recovering an upgraded hydrocarbon product having a molecular weight no higher than said first named hydrocarbonaceous fluid.

2. The process of claim 1 wherein said catalyst comprises a member of the alkaline earth group.

These became the two counts of the interference and reveal the nature of the invention there involved. Catalysts such as those recited in the claims are called molecular filters or sieves.

During the motion period appellants moved to substitute a count under Rule 231(a) (2), which provided:

(a) Within the period set in the notice of interference for filing motions any party to an interference may file a motion seeking:

\*　　\*　　\*　　\*　　\*　　\*

(2) To amend the issue by addition or substitution of new counts.

The proposed substitute count would have changed count 1, supra, solely by

amending the lower limit of the pore size from "about 6" to "about 5" Angstrom units and the upper limit from "about 15" to "about 13" Angstrom units.[1] In support of their motion to substitute, appellants filed a brief stating that the proposed count was necessary to permit them to establish their best date of priority, and referring to the Commissioner's Notice of April 5, 1954 (681 O.G. 864). This notice stated that in some cases the disclosure in an application, "although for the same invention in fact as the patent claim, is somewhat broader than the claim of the patent." In such cases, the notice said, an applicant may be permitted to substitute a count wherein language based upon his slightly broader disclosure replaces the corresponding limitation in the patent claim, if he "makes a satisfactory showing, as by demonstrating that his best evidence lies outside the exact limit of the patent claim." In redeclaring an interference in such cases, "it should be indicated that the claim in the patent corresponds substantially to the [substituted] interference count."

The examiner denied the motion, for reasons which are entirely unclear. He first stated that the 6–15 Angstrom sieve was usable to treat a broad range of hydrocarbons, including straight and branched chain paraffins and olefins, acyclics and ring hydrocarbons, whereas the 5 Angstrom sieve was capable of treating only straight-chain paraffins and olefins. He concluded that the substitute count would somehow "limit" the Kimberlin claims "to the latter group of hydrocarbons and it is not within the jurisdiction of this Office to do so." He further concluded that "the utility of the 5 Angstrom sieve is to a separate invention," and that appellants would have an opportunity to establish their earliest dates in another interference then pending.

Whatever the soundness of the examiner's reasons for denying the motion to substitute, the important thing to note is that it was in fact denied, and the denial was unappealable (see Rule 244 (d)). It does not appear that appellants petitioned the Commissioner to reverse the examiner's ruling.

Appellants proceeded through the interference on the original counts set forth above. Kimberlin stood on his filing date. The board held that appellants had failed to prove that they had invented the subject matter of the counts earlier than Kimberlin's filing date, and awarded priority to Kimberlin. On appeal to this court, we affirmed. Frilette v. Kimberlin, 412 F.2d 1390, 56 CCPA 1242 (1969).

Appellants then filed the divisional application which is now before us. We find claim 1 to be suitable for developing the issues here:

> A process for upgrading hydrocarbons which comprises contacting a hydrocarbonaceous fluid in a conversion zone at elevated temperatures with a crystalline metallic aluminosilicate having uniform pore openings between about 5 and about 13 Angstrom units, said material being the sole conversion catalyst in said zone, and recovering an upgraded hydrocarbon product having a molecular weight no higher than said first-named hydrocarbonaceous fluid.

It will be noted that this claim is the very one appellants sought to substitute for count 1 of the interference. It differs from count 1, set out supra, only in that the pore-size range is here recited as about 5–13 Angstroms, as against about 6–15 Angstroms in the count. The issues developed below revolved around the change in recitation of the pore-size range.

### a. The Rejection on the Kimberlin Patent

The examiner rejected all the claims here on appeal "under 35 U.S.C. 103 as being unpatentable over Kimberlin et al." Appellants conceded the pertinence of the Kimberlin teaching, but sought to

---

1. An Angstrom is a measure of length, and is equal to one one hundred-millionth of a centimeter.

antedate Kimberlin by a Rule 131 affidavit. The board, in affirming the rejection, declined to consider the affidavit insofar as it pertained to pore sizes between 6 and 13 Angstroms. The board stated:

> We will also keep in mind the circumstance that affidavit evidence directed to subject matter embraced by the counts in the aforementioned interference is not here available to appellants, since such evidence should have been presented during the interference proceedings. Thus, for appellants to prevail, we must find that their affidavit contains sufficient evidence to support the allowance of the claims here on appeal, *apart from any evidence directed to the subject matter of the interfering counts.* [Emphasis ours.]

This holding was erroneous.

■ The Kimberlin patent is being used under § 103 as a prior art reference of the type described in § 102 (e).[2] An applicant may remove such a reference, i. e., show that it is not "prior" art, by showing that he made the claimed invention before the patentee's filing date. In the present case, appellants rightly contend that they had no opportunity to do so in the interference proceeding, since the Patent Office would not permit a claim of the present scope to be substituted in the interference. Accordingly, the interference decision is of no relevance to the rejection on the Kimberlin patent, and the patent should be treated as any other patent used as a § 102(e) reference. Appellants' loss of priority in the interference was not based on their failure to show broad conception of subject matter within the overlapping range of 6–13 Angstroms, but on their failure to show reduction to practice or diligence as to the subject matter of count 1. See Fri-

lette v. Kimberlin, supra, 412 F.2d at 1396, 56 CCPA at 1250. It is apparent that evidence of appellants' work with 5 Angstrom sieves, while not relevant with respect to the invention of the interference count, would be relevant evidence of reduction to practice or diligence with respect to the invention now claimed. We must therefore conclude that the fact that appellants suffered an adverse award of priority (a § 102(g) issue), as to an invention which the Patent Office determined was not "substantially the same" as that now claimed, is of no relevance in determining whether they made the invention now claimed before the Kimberlin filing date.

### b. *The Rejection on the Interference Counts*

The board also affirmed the examiner's rejection of certain claims, including claim 1, as *unpatentable over the interference counts,* under § 103. The board said: "We find no patentable distinction between the claims and the counts." Appellants complain bitterly that in so holding the "Board of Appeals has, in effect, reconsidered the Examiner's decision on the motion and has reversed it." They further state:

> In essence, what the Board of Appeals is doing is to say that the Examiner was wrong in denying the Motion to Substitute thereby precluding appellants from showing their best date but that this denial, although regrettable, is not binding on the Board of Appeals. Clearly, such a position runs afoul of common principles of equity and justice.

The solicitor counters this as follows:

> There is a certain finality to such a termination of an interference and it is incredible that appellants could believe that they are entitled to a patent which *embraces the same subject*

2. 35 U.S.C. § 102 provides, in part:
   A person shall be entitled to a patent unless—
   * * * * *
   (e) the invention was described in a patent granted on an application for

patent by another filed in the United States before the invention thereof by the applicant for patent.

*matter* as the established *prior* art. * * * In fact, neither appellants, the Board of Appeals, nor the examiner believes that there is any *patentable distinction* between a catalyst pore size of 5–13 Angstroms as claimed by appellants and 6–15 Angstroms as claimed by Kimberlin. [Emphasis ours.]

We agree with appellants that the board erred in affirming this rejection. We find, however, that appellants, the board and the solicitor have each failed to perceive the precise nature of a Patent Office interference, and have failed to perceive the effects of a decision in such a proceeding.

From the excerpts we have set forth from the Commissioner's Notice of April 5, 1954, it is clear that at the time in question an interference would not be declared merely on the ground that an applicant and a patentee were claiming inventions which were each obvious in view of the other's disclosure under § 103. The claims had to be "substantially the same invention." Certain "immaterial" limitations could be omitted in copying claims from a patent, but the tests for materiality were not necessarily the same tests used in judging obviousness. Thus, we disagree with appellants' contention that the examiner's ruling on the motion, and the board's conclusion here, are necessarily inconsistent.

▬ We also disagree with the solicitor's position as set forth above, which states that the present claims, to be allowable, must be patentably distinct (§ 103) from the interference counts. If it is true that the public should not be doubly burdened with overlapping patent claims in this case,[3] it is manifest from the language of § 102(g) and § 103 that the single valid patent should go to whomever was first to make his respective invention. The interference

decision in this case does not tell us that. The fallacy in the solicitor's position is in referring to Kimberlin's act of inventing (§ 102(g)) the subject matter of his claims as "prior art." It may be "art,"[4] but from the interference decision we do not know if it was "prior" to appellants' act of inventing the subject matter of the claims now on appeal. Appellants now seek to show by affidavit that Kimberlin's act of inventing was not prior to theirs, a showing which they were prevented from making in the interference. They must be permitted to do so.

Our conclusions are in harmony with previous case holdings. In In re Risse, 378 F.2d 948, 54 CCPA 1495 (1967), we held that the losing party to an interference was estopped *ex parte* from presenting a claim which could have been made a count of the interference. To the same effect, see In re Kyrides, 159 F.2d 1019, 34 CCPA 920 (1941). That is clearly not the situation here, since appellant tried to get claim 1 into the interference and was prevented by the examiner from doing so. We also note that there was no attempt in *Risse* to antedate *ex parte* the invention date established by the adverse party to the interference.

In Ex parte Des Rosiers, 17 USPQ 272 (P.O.Bd.App.1933), the appellant was permitted to swear behind a patent and thereby remove it as a reference against claims which were broader in some respects than the counts which had been lost by the appellant in an interference with the patentee. The board noted that the claims had been present in the appellant's case at the time of the interference and that the patentee had made no attempt to file a reissue application containing claims of that scope. The board held that the appellant was not estopped by the interference, since his adversary was on notice of what the appellant was claiming and made no effort to stop

---

3. As a *general* proposition this is clearly not the law. In a true dominant invention/subservient invention situation, the claims of the dominant patent may be of a scope completely encompassing the subservient patent claims, yet both patents may be valid.

4. We refrained from holding on this point in In re Hilmer, 424 F.2d 1108, 57 CCPA — (1970), fn. 3.

him. We think the present case presents an *a fortiori* situation as compared with *Des Rosiers,* for here not only did Kimberlin fail to provoke an interference on the claims now before us, but resisted appellants' attempt to do so.

We appreciate and commend the desire of the Patent Office to prevent the issuance of two patents where, at least in its view, only one can be valid. However, the limited scope of a Patent Office interference prevents the Office from logically using the result of such a proceeding against an applicant in a situation such as the present case.[5]

### c. *Sufficiency of the Affidavit in Other Respects*

 Quite apart from the issues thus far discussed, the board found that certain limitations in various claims were not met by the facts shown in the affidavit. Most of these objections were removed from our consideration by appellants' limiting their appeal to claims 1, 2, 12, 13, 20–22 and 24. The board's criticisms still remaining for consideration pertain to the following limitations:

The major portion of the cation content of the aluminosilicate being supplied by a cation other than sodium. (Claims 20–22)

The aluminosilicate being substantially free of exchangeable sodium. (Claim 24)

Appellants contend that these limitations are inherently shown in the affidavit, since it shows the use of a catalyst known commercially as "Molecular Sieve 5A," manufactured by Linde Air Products. We agree with appellants' position. Their specification clearly states that the "Molecular Sieve 5A" is a "crystalline aluminosilicate salt * * * in which substantially all of the 12 ions of sodium [in the 4A sieve] are replaced by calcium." This has never been questioned at any stage of the proceedings. The documentation submitted with ap-

pellants' affidavit verifies that the 5A sieve used by appellants was a calcium-containing material.

### *Summary*

Since we have found that the board's bases for affirming the rejections of the claims on appeal were unsound, its decision as to those claims is reversed.

Reversed.

---

[5] We note that the Patent Office has recognized this problem and has attempted to alleviate it to some extent by providing a broader base for Patent Office interferences. See MPEP § 1101.02. Our comments in this opinion pertain to interference practice as it existed at the time of the Frilette-Kimberlin interference.