ODETICS, INC., Plaintiff,

v.

STORAGE TECHNOLOGY
CORPORATION, et
al., Defendants.

Civ. A. No. 95–881–A.

United States District Court,
E.D. Virginia, Alexandria Division.

Dec. 7, 1995.

Paul J. Kennedy, Washington, DC, Vincent J. Belusko, William J. Robinson, Stuart L. Merkadeau, Eric Shih, Los Angeles, CA, for plaintiff.

Laurence E. Stein, Pennie & Edmonds, Washington, DC, John R. Stark, Bernard H. Chao, Pennie & Edmonds, Menlo Park, CA, Stephen J. Harbulak, Michael J. Lyons, Pennie & Edmonds, New York City, W. Russell Wayman, Storage Technology Corporation, Louisville, CO, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

Section 102(g) of Title 35 sets forth, in two sentences, the rule of priority of invention as a condition of patentability.[1] The first sentence establishes that a person is not entitled to a patent if the invention was made earlier by someone else who did not abandon, suppress, or conceal it. The second sentence is an instruction on how to determine priority of invention. This summary judgment motion presents the novel question whether the second sentence is applicable in infringement suits, as well as in interference proceedings.

### I.

The relevant facts are undisputed. Plaintiff Odetics, Inc. ("Odetics"), a Delaware corporation, holds United States Patent No. 4,779,151 (the "'151 patent"), entitled "Robotic Tape Cassette Handling System With Rotary Loading and Unloading Mechanism." This patent covers an automated tape library ("ATL") system for handling and storing video or computer cartridges. Specifically, the Odetics ATL system includes a storage library with bins for tape cartridges, a rotary mechanism for providing access to the library, and a robot for moving cartridges between the storage bins and the· rotating mechanism or to tape transports (i.e., tape players).

Storage Technology Corporation ("Storagetek"), also a Delaware corporation, holds United States Patent No. 4,864,511 (the "'511 patent") in connection with its own ATL, which it calls an automated cartridge system.[2] The Storagetek system contains a rotatable pass-thru port that permits the exchange of cartridges between storage modules within a library or from one library to

1. Section 102 provides, in pertinent part: A person shall be entitled to a patent unless (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

35 U.S.C. § 102.

2. Storagetek also holds a number of other patents covering specific aspects of its automated cassette storage system, and has alleged in a counterclaim that Odetics's ATL system infringes these other Storagetek patents. Storagetek has not alleged, however, that the Odetics '151 patent infringes the Storagetek '511 patent.

an adjacent library. It also includes a robot that moves tapes between the storage bins and the pass-thru port or from the bins to a tape transport.

On June 29, 1995, Odetics filed this suit against Storage Technology Corporation, Visa International Service Association, Inc., Visa USA, Inc., and Crestar Bank, Inc. (collectively, the "Storagetek defendants"), claiming infringement of the '151 patent.[3] The Storagetek defendants respond, *inter alia,* by asserting a defense under 35 U.S.C. § 102(g). More precisely, the Storagetek defendants claim that Storagetek conceived of the invention described in the '151 patent before Odetics and diligently reduced the invention to practice, and that this prior invention is an affirmative defense to infringement under § 102(g).[4] With this motion, Odetics seeks to have the § 102(g) defense dismissed. Because the Storagetek defendants do not dispute that Odetics was the first to reduce the invention to practice, Odetics argues that its '151 patent is clearly valid under § 102(g) and that the Storagetek defendants' affirmative defense therefore fails.

The parties' diametrically opposed readings of § 102(g) stem not from a dispute about what the words of the statute mean, but rather from disagreement about how much of the statute is applicable to this case. Thus, everyone agrees that, in the context of an interference proceeding, "priority goes to the first party to reduce an invention to practice *unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice.*" *Price v. Symsek,* 988 F.2d 1187, 1190 (Fed.Cir.

1993) (emphasis supplied). The parties further agree that the first sentence of § 102(g) is an appropriate defense in a patent infringement suit.[5] But the parties part company on whether the Storagetek defendants can rely on § 102(g)'s second sentence, which Odetics contends applies solely in the context of interference proceedings in the PTO. The precise question is thus whether the second sentence of § 102(g) can also apply in the patent infringement context. If so, the Storagetek defendants' § 102(g) defense retains vitality; if not, the defense must be dismissed.

## II.

There is a formidable threshold obstacle to Odetics's contention that § 102(g)'s second sentence applies only in interference proceedings: nothing in the text of the statute so limits the applicability of that sentence. Indeed, the text of the second sentence plainly elucidates and illuminates the first sentence. Given this as the purpose of the second sentence, there is no reason textually why this elucidation or illumination should be limited to the interference context. Moreover, to imply this limitation would be contrary to the settled rule that a court interpreting a statute may not strike or read anything out of the statute, but instead must give it an interpretation that lends significance and effect to each piece of the whole.[6] Limiting the application of the second sentence of § 102(g) to the interference context would violate this axiom of statutory construction.

Nor is there any reason in principle or sound public policy to limit the second sentence's applicability to interference pro-

---

3. According to Odetics's complaint, Storagetek is infringing the '151 patent by (i) manufacturing, selling, and using infringing ATLs, (ii) inducing others to use infringing ATLs, and (iii) contributing to infringement by others by repairing infringing ATLs. The other three named defendants are allegedly infringing the '151 patent by using the ATLs manufactured and sold by Storagetek.

4. Alternatively, the Storagetek defendants claim that the device covered by Storagetek's patent is different from the Odetics system, and hence that it does not infringe Odetics's '151 patent.

5. *See, e.g., New Idea Farm Equipment Corp. v. Sperry Corp.,* 916 F.2d 1561 (Fed.Cir.1990); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430 (Fed.Cir.1988).

6. Cf. *John Hancock Mutual Life Ins. Co. v. Harris Trust and Sav. Bank,* —— U.S. ——, ——, 114 S.Ct. 517, 523, 126 L.Ed.2d 524 (1993) (noting that courts construing statute must be guided by provisions of whole law rather than single sentence) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987)).

ceedings. Indeed, reason and sensible policy considerations point to the opposite conclusion, namely that § 102(g), as an integral part of a comprehensive body of federal patent law, has the same meaning in all patent contexts. This is so because "the law as applied in the patent office must be uniform with the law as applied in the courts in passing on patent validity." *In re Bass*, 474 F.2d 1276, 1285 (C.C.P.A.1973).[7] It would be anomalous, to be sure, if § 102(g) were read differently in different contexts. On the one hand, the PTO, in the interference context, could deny a patent to an applicant because the applicant was not the first inventor under the second sentence of § 102(g). On the other hand, a court considering only the first sentence of § 102(g) might allow a patentee who was not the first inventor to sue and recover for infringement, perhaps even from the person who would be deemed the first inventor pursuant to § 102(g) as a whole. This dichotomy in the application of the priority rule makes no sense; a person is either the first inventor, entitled to the patent, or he is not. The standard for priority should not change based on the context in which the determination is made. Just as a word or phrase is presumed to have the same meaning in different provisions of a statute,[8] so should the same provision be presumed to have the same meaning when applied in different contexts within a single, comprehensive federal scheme. In sum, if § 102(g) as a whole applies to determine priority in the patent application process, which both parties concede it does, it must also apply when priority is at issue in the patent infringement context.

The meager but uniform authority available on the issue supports this conclusion. Thus, the only reported cases involving prior invention as an infringement defense with the same sequence of events as alleged here—namely, an inventor who is first to conceive but last to reduce to practice—con-

firm that there is no limit on the applicability of the second sentence of § 102(g). In *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (1986), a patent infringement suit, the Federal Circuit reversed the trial court's factual determination that the inventor of a patent assigned to the plaintiff had not been the first to conceive of the patented diagnostic method. Pointing to the second sentence of § 102(g), the *Hybritech* panel concluded that the inventor's earlier conception, coupled with his diligence in reducing the method to practice, established priority under § 102(g) and thus overcame the defendant's invalidity defense to the infringement suit. *See Hybritech*, 802 F.2d at 1376–78. Similarly, in *Potter Instrument Co., Inc. v. Odec Computer Systems, Inc.*, the court found for the defendant in a patent infringement suit and declared the patent in suit invalid because the defendant showed that the plaintiff was not the first inventor of the patented device. *See Potter Instrument Co.*, 370 F.Supp. 198, 208 (D.R.I.1974). En route to this holding, the court quoted and applied the second sentence of § 102(g) to find that the prior inventor had conceived of the device first, before the plaintiff, but reduced the device to practice after the plaintiff did so. *Id.* at 206–08.

Further support for the conclusion that § 102(g) should be read as a whole in the infringement context appears in *Gardner v. Ford Motor Co.*, 17 U.S.P.Q.2d 1177, 1990 WL 272011 (W.D.Wash.1990). There, as here, the plaintiff sought a ruling that the second sentence of § 102(g) is limited in its application to interference actions in the PTO. The court declined to so rule, however, after finding nothing in the statute to warrant the limitation. *Gardner*, 17 U.S.P.Q.2d at 1177.

Odetics's authorities are not to the contrary. Some of Odetics's cited cases state that an invention cannot receive priority un-

---

7. Obviously, Odetics's interpretation of the statute would change its meaning from one context to another. This is clear from the situation at bar: if Odetics is correct and only the first sentence of the statute applies, Storagetek's affirmative defense under § 102(g) is stillborn; if Odetics is wrong and the second sentence applies as well, the defense survives for now.

8. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1982) (holding that term "filed" necessarily has same meaning in 42 U.S.C. § 2000e–5(c) and § 2000e–5(e)).

less it was actually reduced to practice. But significantly, they do not state that the reduction to practice must be complete *before the other patent issues*.[9] Other cases cited by Odetics are inapposite because the § 102(g) prior inventions at issue in those cases were not conceived prior to the patented invention and reduced to practice afterwards.[10] In other words, none of the cases relied on by Odetics present facts that fall under the "first to conceive, last to reduce to practice" rule. *A fortiori*, these cases do not stand for the proposition that this rule cannot be used in infringement litigation.

Finally, *In re Hilmer*, 424 F.2d 1108 (C.C.P.A.1970), also lends no support to Odetics's argument. In *Hilmer*, the Court of Customs and Patent Appeals stated that the term "priority" refers either to (i) the interference issue, namely, which of two rival inventors claiming the same invention should be considered first in law, or to (ii) preservation of an effective filing date to protect an applicant against loss of right to a patent. The court went on to declare that "[n]othing ... tends to indicate that this matter of 'priority' ... modif[ies] the long-standing provisions of our statutes as to what shall be deemed 'prior art' under § 103." *Hilmer*, 424 F.2d at 1113. Yet, this language merely establishes the distinction between § 102(g), which deals with priority, and § 103, which deals with prior art and which was the subject of *Hilmer*. The Patent Office Board of Appeals below, ignoring the distinction, had attempted to import the language and standard of § 102(g) into the § 103 prior art analysis. In fact, the same distinction was also noted earlier in *Hilmer*.[11] Thus, the quoted language does not stand for the proposition that the second sentence of § 102(g) is inapplicable in patent infringement proceedings. Indeed, *Hilmer*'s discussion of § 102(g) never differentiates between the first and second sentences of that provision,

and the applicability of the first sentence as a defense to a patent infringement suit is unquestionable.[12] Moreover, *Hilmer* states that "priority" can refer to the protection of an applicant against loss of right to a patent. When § 102(g) is asserted as a defense in a patent infringement suit, the patentee faces the same potential loss of right to his patent, albeit after the issuance of the patent rather than before.

In sum, priority is clearly relevant to the question of patent validity, and, therefore, to the question of patent infringement. And § 102(g)'s second sentence elaborates on what constitutes priority. Hence, the second sentence must be available as part of an invalidity defense to a defendant facing liability for patent infringement.

Odetics's motion for summary judgment on Storagetek's § 102(g) defense is denied. An appropriate Order has issued.

---

**9.** *See In re Katz*, 687 F.2d 450 (C.C.P.A.1982) (*en banc*); *International Glass Co. v. United States*, 408 F.2d 395 (Ct.Cl.1969).

**10.** *See Innovative Scuba Concepts, Inc. v. Feder Industries, Inc.*, 26 F.3d 1112 (Fed.Cir.1994); *Texas Instruments, Inc. v. Int'l Trade Comm'n*, 988 F.2d 1165 (Fed.Cir.1993).

**11.** The *Hilmer* court noted that "[t]he board's statement implicitly requires two substantial assumptions: ... (2) that prior 'invention ... by another' is 'prior art' within the meaning of § 103." *Id.* at 1112 n. 3.

**12.** *See supra* note 5.